

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00281-CV

**FLYING DIAMOND-WEST MADISONVILLE LIMITED PARTNERSHIP, SOL LEVINE, AND MARDAN ENERGY CORPORATION,**

Appellants

v.

**GW PETROLEUM, INC., GREAT WESTERN ONSHORE, INC., FORCENERGY ONSHORE, INC., CASCADE ENERGY CORPORATION, FAULCONER 1996 LLC, GULFWEST OIL COMPANY, AND GULFWEST OIL & GAS COMPANY,**

Appellees

From the 278th District Court
Madison County, Texas
Trial Court No. 6354

## DISSENTING OPINION

I agree with the majority's determination that the trial court properly granted the 1992 summary-judgment motion on limitations grounds with regard to Levine's contract and accounting claims that accrued before February 20, 1986. For the reasons

which follow, however, I respectfully disagree with the majority's determination that the trial court properly denied Great Western's[1] motion to dismiss.

Great Western argues that the trial court abused its discretion by refusing to dismiss the lawsuit for want of prosecution under principles first approved by the Supreme Court in *Callahan v. Staples*, 139 Tex. 8, 161 S.W.2d 489 (1942). However, the majority does not even address *Callahan* or its progeny.

In *Callahan*, the Court established the following procedures for determining whether a suit should be dismissed for want of prosecution because it has effectively been abandoned by the plaintiff.

> Where the defendant in a suit is called to answer and has responded to the call, the duty devolves on the plaintiff to proceed in prosecuting the suit to a conclusion with reasonable diligence, and whenever a delay of an unreasonable duration occurs, such delay, if not sufficiently explained, will raise a conclusive presumption of abandonment of the plaintiff's suit, and a discontinuance results. However, since the discontinuance must be based on a factual situation involving lack of due diligence, same does not and cannot become effective until the basic facts are adjudicated by the court. Whenever the hearing for such adjudication is had, the plaintiff has the right to be heard to explain, if he can, his delay in prosecuting his suit.

*Id.* at 491.

The Supreme Court has cited the *Callahan* rationale with approval in subsequent decisions. *See Denton County v. Brammer*, 361 S.W.2d 198, 201 (Tex. 1962) (plurality op.); *Bevil v. Johnson*, 157 Tex. 621, 307 S.W.2d 85, 87-88 (1957). So have several intermediate courts of appeals. *See, e.g., Lessard v. Velsicol Chem. Corp.*, No. 13-00-00113-CV, 2009 WL 1089362, at *4 (Tex. App.—Corpus Christi Apr. 23, 2009, pet. filed); *3V, Inc. v. JTS*

---

[1] I refer to appellees collectively as "Great Western" and to appellants collectively as "Levine."

*Enters., Inc.*, 40 S.W.3d 533, 541 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Christian v. Christian*, 985 S.W.2d 513, 515 (Tex. App.—San Antonio 1998, no pet.); *Hosey v. County of Victoria*, 832 S.W.2d 701, 704 (Tex. App.—Corpus Christi 1992, no writ); *Hicks v. First Nat'l Bank in Dalhart*, 778 S.W.2d 98, 101-02 (Tex. App.—Amarillo 1989, writ denied). And although the Supreme Court has not recently discussed *Callahan*, at least one commentator has described this basis for dismissal as "established." 5 ROY W. MCDONALD & ELAINE GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 27:53[b] (2d ed. 1999).

Under *Callahan*, a two-part test applies: (1) whether there has been an unreasonable delay; and (2) if so, whether the plaintiff has established a "sufficient excuse" or explanation for the delay. *See Lessard*, 2009 WL 1089362, at *4; *3V, Inc.*, 40 S.W.3d at 541; *Christian*, 985 S.W.2d at 515; *Hosey*, 832 S.W.2d at 704; *see also Brammer*, 361 S.W.2d at 201; *Bevil*, 307 S.W.2d at 87-88; *Callahan*, 161 S.W.2d at 491.

Here, there was a six year delay between the filing of Levine's second amended petition and the third amended petition. During this period, Levine did not file anything in court and did not seek a trial setting. And after the filing of the third amended petition, Levine filed nothing for nearly three years when he filed the response to Great Western's motion to dismiss. I would hold that this nine-year period of delay is unreasonable as a matter of law and raises a rebuttable presumption of abandonment. *See Brammer*, 361 S.W.2d at 200-01 (12 years); *Bevil*, 307 S.W.2d at 88 (8 years); *Christian*, 985 S.W.2d at 515 (13 years); *Manning v. North*, 82 S.W.3d 706, 713-14 (Tex. App.—Amarillo 2002, no pet.) (8½ years).

The next question is whether Levine established a "sufficient excuse" or explanation for the delay. In the response to Great Western's motion to dismiss, Levine argues that he has a "sufficient excuse" for the delay because:

- Great Western and related entities employed a "Byzantine structure" of "approximately 80 corporate entities" and had dissolved or attempted to dissolve "many of the limited partnerships" involved;

- documents produced both formally and informally by Great Western were "misleading," "deceitful", "neither consistent nor trustworthy", and "completely unreliable";

- Great Western agreed to informal discovery in 1993 but had refused to produce "necessary documents";

- Great Western had "stonewalled discovery for some 28 years" by only recently filing various title documents;

- Levine had hired numerous consultants and had "taken massive steps to accumulate [pertinent] documents" during the period of informal discovery to fully investigate the claims and has discovered additional claims and potential adverse parties as a result;

- Great Western's parent company filed bankruptcy;

- Great Western refused to provide an accounting; and

- Mr. and Mrs. Levine have both experienced numerous illnesses and hospitalizations which have "caused them to be incapacitated for periods of months at a time."

Regarding the intricacies of the manner in which Great Western and its related entities are structured, there were three named defendants at trial. Two of them were named in the original petition, and the third, Forcenergy Onshore, Inc., was added in 1999 by Levine's third amended petition. However, Great Western claims (and Levine does not dispute) that Levine was aware Forcenergy was Great Western's parent

corporation when he originally filed suit.  But after filing the amended petition to add Forcenergy in 1999, Levine took no further action until he responded to Great Western's motion to dismiss three years later.

Regarding the documents produced by Great Western, the informal discovery agreement, and the alleged "stonewalling" of discovery, I first note that the parties entered a Rule 11 agreement for informal discovery in January 1993.  However, Levine did not raise any formal complaint with the trial court regarding Great Western's compliance with this agreement until he responded to the motion to dismiss in September 2002, nearly ten years later.  *See Ozuna v. Sw. Bio-Clinical Labs.*, 766 S.W.2d 900, 902 (Tex. App.—San Antonio 1989, writ denied) ("plaintiff did not seek the aid of any court" to obtain documents withheld by former law firm), *disapproved on other grounds by Villarreal v. San Antonio Truck & Equip., Inc.*, 994 S.W.2d 628 (Tex. 1999).  In the same manner, Levine should have sought formal court intervention when it occurred to him that Great Western was "stonewalling" or producing misleading documents.

Levine also complains of the tardy filing and/or disclosure by Great Western of certain documents.  However, in the exhibits attached in support of Levine's response to the motion to dismiss, Levine identifies documents executed primarily in the 1970's and 1980's.  As "examples of significant *late* filings" (emphasis added), Levine identifies: (1) a gas purchase contract filed of record in 1989; (2) a cross-assignment and stipulation of ownership filed of record in 1989; and (3) an agreement on the gas

gathering system filed of record in 1995. Notably, the latest of these documents to be filed was filed of record seven years before Great Western filed its motion to dismiss.

With regard to the consultants Levine has retained, the earliest mention of a retained consultant is 1999 when he retained a consulting engineer. In fact, Levine's response to the motion to dismiss suggests that he did not even begin to seriously engage in "informal" discovery until 1999, some six years after the parties' Rule 11 agreement was entered.

Levine also contends that a portion of the delay is attributable to Forcenergy's filing for bankruptcy in 1999. But again, this happened after a 6-year hiatus during which no formal action was occurring in Levine's suit against Great Western. I also note that Great Western was not a party to Forcenergy's bankruptcy proceedings. *See Manning*, 82 S.W.3d at 713-14 (co-defendant's bankruptcy proceeding did not rebut presumption that plaintiffs failed to prosecute suit with due diligence).

Concerning Great Western's alleged refusal to provide an accounting both before and after the dissolution of the Flying Diamond-West Madisonville Limited Partnership in 1995, Levine never sought court intervention (as he failed to do with regard to "informal discovery"). *See* TEX. R. CIV. P. 172 (party may seek appointment of auditor); *Whitaker, Alexander & Bros. v. Bledsoe*, 34 Tex. 401, 402-03 (1871) (auditor should have been appointed to resolve numerous matters of account in partnership dispute); *Villiers v. Republic Fin. Servs., Inc.*, 602 S.W.2d 566, 571 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.) (trial court properly appointed auditor due to complicated nature of suit).

Finally with regard to the Levines' periods of illness, Mrs. Levine is not a party to this litigation, and there is nothing in the record to indicate that Levine's counsel and the numerous consultants who have been retained required Mr. Levine's immediate presence at every stage to effectively prosecute the case.

To summarize, I would hold that there was an unreasonable delay in the prosecution of the suit as a matter of law and Levine failed to establish a sufficient excuse or explanation for the delay. *See Lessard*, 2009 WL 1089362, at *4; *3V, Inc.*, 40 S.W.3d at 541; *Christian*, 985 S.W.2d at 515; *Hosey*, 832 S.W.2d at 704; *see also Brammer*, 361 S.W.2d at 201; *Bevil*, 307 S.W.2d at 87-88; *Callahan*, 161 S.W.2d at 491.

Accordingly, I would affirm that portion of the trial court's 1992 summary judgment which rendered judgment on limitations grounds with regard to Levine's contract and accounting claims that accrued before February 20, 1986. *See Newco Drilling Co. v. Weyand*, 960 S.W.2d 654, 656 (Tex. 1998) (per curiam). I would reverse the remainder of the judgment and render a judgment of dismissal. Because the majority reverses the judgment and remands this cause for further proceedings, I respectfully dissent.

FELIPE REYNA
Justice

Dissenting opinion delivered and filed August 26, 2009
Do not publish